IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AH, a minor, by and through her Parents, CH and JH, and CH and JH, in their individual capacities,<br><br>*Plaintiffs,*<br><br>v.<br><br>GARNET VALLEY SCHOOL DISTRICT,<br><br>*Defendant.* | No. _____ |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (hereinafter, "IDEA"); and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); the federal regulations thereunder, at 20 C.F.R., pt. 300 and 34 C.F.R., pt. 104; and the related special education regulations of the Pennsylvania Board of Education, 22 Pa. Code chs. 14, 15.

2. This Complaint follows an administrative due process proceeding conducted under the auspices of the Pennsylvania Office of Dispute Resolution (ODR) with respect to Plaintiffs' claims against Defendant Garnet Valley

School District (the "District") with respect to the education of AH, a minor ("Student"), under the IDEA and Section 504. (<u>AH v. Garnet Valley Sch. Dist.</u>, ODR No. 25203-21-22.) A true and complete copy of the Decision and Order of the independent hearing officer, handed down on January 5, 2022 ("the Decision"), is filed with this Complaint as <u>Exhibit A</u>.

3.  This Complaint does not seek review of any of the findings of fact or conclusions of law in the Decision. Instead, this Complaint seeks statutory compensation for the reasonable attorneys' fees and costs incurred by Plaintiffs CH and JH, parents of AH ("Parents"), in connection with the due process proceeding and the matter presently before the Court. It also seeks an order of this Court compelling the District to comply with the terms of the Decision, specifically, the District's obligation to make compensatory education services available to AH as provided therein.

## JURISDICTION AND VENUE

4.  This action is brought pursuant to 20 U.S.C. § 1415(3)(B)(i), 29 U.S.C. § 794a(b), and the general grant of federal question jurisdiction under 28 U.S.C. § 1331.

5.  Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate claims arising under state law.

6.  Plaintiffs have exhausted their available administrative remedies under IDEA, 20 U.S.C. §1415(i)(1)(A), by obtaining a final decision in the state administrative proceeding on all claims for which the relief sought is available

under IDEA.

7. Venue in this District is proper under 28 U.S.C. § 1391(b), as all or virtually all of the events giving rise to the Complaint occurred within the territorial limits of the Eastern District of Pennsylvania.

**PARTIES**

8. Each of Plaintiffs CH and JH is an adult individual and a citizen of the Commonwealth of Pennsylvania. Parents reside and, at all times relevant to this Complaint, have resided within the boundaries of the District.

9. Plaintiff AH is the minor daughter of Parents and a citizen of the Commonwealth of Pennsylvania. AH resides and, at all times relevant to this Complaint, has resided within the boundaries of the District.

10. AH is an eight-year-old student with multiple disabilities. BD is currently hospitalized at Nemours Children's Hospital in Wilmington, Delaware ("Nemours"). Prior to her recent hospitalization, she attended a public school in the District, but her last agreed-upon placement under the IDEA was Melmark School.

11. AH is a child with a disability under the IDEA and a "qualified individual with a disability" within the meaning of Section 504. AH is a nonverbal student with Down's Syndrome and autism spectrum disorder. AH has also been diagnosed with nonverbal cognitive delays, oropharyngeal dysphagia, an oral aversion, cysts of the brain, congenital heart anomaly, asthma and esophageal reflux disease (GERD).

12. AH is eligible for special education and related services under the IDEA. Her eligibility for these services has never been disputed. She has impairments that substantially limit her in major life activities, specifically the life activities of speech, communication, socialization and learning, and therefore is entitled to the protections of Section 504.

13. AH is a "protected handicapped student" within the meaning of 22 Pa. Code §15.2.

14. Defendant Garnet Valley School District is a school district created and existing under the laws of the Commonwealth of Pennsylvania, with its office located at 80 Station Road, Glen Mills, Pennsylvania 19342. The District is a "local educational agency" (LEA), within the meaning of IDEA, 34 C.F.R. § 300.28(a), and 22 Pa. Code ch. 14, and a "recipient of federal assistance" within the meaning of Section 504.

## LEGAL FRAMEWORK

15. IDEA was enacted to "ensur[e] children with disabilities and the families of such children access to a free appropriate public education and [to] improv[e] educational results for children with disabilities." 20 U.S.C. § 1400(c)(3).

16. IDEA and its implementing federal regulations, 34 C.F.R. pt. 300, require states and localschool districts that receive funds under the IDEA to provide school age residents who have disabilities with a free appropriate public education (FAPE), comprised of, inter alia, special education and

related services. See 20 U.S.C. §§ 1401(9), 1412(a)(1)(A); 34 C.F.R. §§ 300.34, 300.39.

17. The IDEA further imposes on school districts the requirement to develop, review, and revise an Individualized Education Program (IEP) for each child with a disability. 20 U.S.C. § 1412(a)(4).

18. In conducting special education evaluations, the law imposes certain requirements on LEAs to ensure that sufficient and accurate information about the child is obtained. The evaluation of a child for special education services must assess the child "in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities[.]" 34 C.F.R. § 304(c)(4); see also 20 U.S.C. § 1414(b)(3)(B).

19. Every IDEA-eligible student is entitled to a free appropriate and public education (FAPE), defined to include special education and related services that (a) are provided at public expense, under public supervision and direction, and without charge; (b) meet the standards of the State educational agency (SEA), including IDEA Part B requirements; (c) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (d) are provided in conformity with an IEP that meets the requirements of 34 C.F.R §§ 300.320 through 300.324.

20. A FAPE "'consists of education instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are

necessary to permit the child to benefit from the instruction.'" W.B. v. Matula, 67 F.3d 484, 491 (3d Cir. 1995) (quoting Bd. Of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982)), abrogated on other grounds by A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007). This generally occurs through the creation of an IEP, for each disabled child, which "consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goal for the child's education and specifying the services the child will receive." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988), cert. denied, 488 U.S. 1030 (1989).

21. Addressing the scope of the obligation of states and LEAs under IDEA to deliver FAPE, the Supreme Court held, in Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 197 L. Ed. 2d 335 (2017), that, for all students, including those performing at grade level and those unable to perform at grade level, the responsible school agency must offer an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

22. Section 504 also requires that students with disabilities be provided a FAPE. Recipients of federal funds are required to "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." Id. § 104.33(a). The term "appropriate education" is defined as "the provision of regular or special education and related aids and services that (i) are designed

6

to meet individual educational needs of the handicapped persons as adequately as the needs of nonhandicapped persons are met, and (ii) are based on adherence to the procedures that satisfy the requirements of [Part 104]." Id. § 104.33(b).

23. In addition, Section 504 and its implementing regulations, 34 C.F.R. § 104.1 et seq., prohibit a federal funds recipient from discriminating against any otherwise qualified individual with a disability or excluding such an individual from the benefits of a program. A failure to provide a disabled student with the aids, services or accommodation required for him to benefit from an education constitutes discrimination under Section 504, see id. § 104.4(b), and 22 Pa. Code § 15.3.

24. The rights bestowed upon students and families by the IDEA and Section 504 are enforceable through multijurisdictional administrative and judicial procedures. See 20 U.S.C. § 1415; 34 C.F.R. §§ 104.36, 300.507, 300.510, 300.512; 22 Pa. Code §§ 14.162, 15.8. Neither compensatory damages nor attorneys' fees are available to plaintiffs at the state administrative level, however. See 20 U.S.C. § 1415(i)(3)(B); 29 U.S.C. § 794a(b); W.B., 67 F.3d at 493.

25. IDEA and Section 504 provide that a party aggrieved by a decision at the administrative, or state, level has the right to bring a civil action in federal district court. 20 U.S.C. §1415(i)(2); U.S.C. § 794a(b).

26. If a school district or other LEA denies FAPE to a student, the

7

parents, on behalf of their child, may be entitled to various remedies under IDEA and Section 504, including, among others, compensatory education and tuition reimbursement. See Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 369 (1985) (tuition reimbursement); M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 397 (3d Cir. 1996) (compensatory education).

27. A parent or parents who are the "prevailing party" in a case or proceeding under IDEA and Section 504 are entitled to statutory attorneys' fees and related costs. 20 U.S.C. § 1415(i)(3)(B), (C); 29 U.S.C. § 794a(b).

## STATEMENT OF FACTS

28. Student transitioned into the District from a school district in Washington State in the summer of 2019. As a result of sensory deprivation experienced in infancy before her adoption by Parents, AH engages in very serious self-injurious behaviors, including punching herself in the face and eye. In one tragic episode, AH struck an eye and blinded herself. AH therefore requires around-the-clock monitoring to keep her safe.

29. During the 2019-20 school year, when AH was in kindergarten, a dispute developed between Parents and the District about the use of a helmet, intended to be a protective device for times when AH could not be supervised closely by an adult, and the Parents' insistence on the need for a Functional Behavioral Assessment (FBA).

30. On May 2, 2021, Parents brought AH to the hospital looking for supports regarding AH's behaviors, sleep medication to reduce self-injury at

night and additional medical input, which the District had been requesting. Once AH was admitted, and throughout the period that Parents' due process case was proceeding, the Nemours team attending to AH was adamant that they would not permit AH's discharge from the hospital without a safe discharge plan.

31. On May 7, 2021, Parents filed a complaint with the Pennsylvania Department of Education (PDE) regarding the District's use of restraints. PDE found the District out of compliance on two grounds, i.e., that the District did not include a positive behavioral support plan (PBSP) or behavioral goals in the Student's IEP in an effort to reduce the Student's self-injurious behaviors, which resulted in the need for mechanical restraints; and that the District failed to have a qualified medical professional determine whether to use, and agreement by the Parents to use, mechanical restraints on the Student in the special education classroom. The District did not appeal PDE's decision.

32. Disputes between Parents and the District over AH's IEP, the use of the helmet, aide supervision, an appropriate placement and other issues continued in the 2021-22 school year, while AH was hospitalized. Parents and AH's medical team believed that AH required a residential school placement where AH could have 24/7 supervision. The District was prepared to offer AH only a day program at Melmark School, with limited after-school supports in the home, an alternative that was not acceptable to Nemours as a safe discharge plan.

9

33. On July 20, 2021, Parents filed their due process complaint with ODR, commencing the state administrative proceeding before Independent Hearing Officer James Gerl. Hearings were held on two, non-consecutive days in the Fall of 2021.

34. In their due process complaint, Parents asserted that the District had denied AH a FAPE, on several grounds, including, inter alia, that AH's IEP did not appropriately address AH's behavioral issues; that the District failed to conduct a timely FBA and create an appropriate PBSP for AH; and that the District had used an unlawful restraint, the helmet, on AH. Because the District was unable to deliver FAPE through an in-District placement for AH, Parents sought a placement for AH at a private, residential school.

35. The Hearing Officer's Decision was handed down on January 5, 2022. The Hearing Officer held that the District had failed to conduct a timely functional behavioral analysis of Student and the District denied a free and appropriate public education to Student while she was attending class in the District by failing to develop and implement an appropriate behavioral intervention plan to address the student's self-injurious behaviors.

36. The Hearing Officer found that the District committed an evaluation violation by failing to conduct a timely functional behavioral analysis of the student's self-injurious behaviors; and that Parents had proven that the District denied a free and appropriate public education to AH by failing to properly address her problem behaviors in her IEPs.

37. The Hearing Officer also found that the District's continual use of the helmet without a behavior plan designed to gradually remove it clearly interfered with the Student's learning.

38. The Hearing Officer awarded Plaintiffs substantial equitable relief for the District's denial of FAPE to AH. The Hearing Officer awarded Parents one full day of compensatory education for each school day during the period of the denial of FAPE.

39. The Hearing Officer also ordered the District to convene the student's IEP team, within thirty days of the entry of the Decision, and to amend Student's IEP so that it becomes a "kitchen sink" IEP that includes an appropriate bundle of services, including a positive behavior support plan designed and guided by a board-certified behavior analyst who is experienced working with students who engage in self-injurious behaviors, including the gradual and systematic phase-in of replacement behaviors for the self-injurious behaviors.

40. The Hearing Officer ordered that AH's IEP should include a specific plan to gradually reduce reliance on the helmet over time; and that Student should have an ABA-trained, one-on-one paraprofessional who would implement the new behavior plan under the direct supervision and guidance of the board-certified behavior analyst (BCBA).

41. The Hearing Officer declined to order the placement of AH at a residential school.

42. Since the Decision was entered on January 5, 2022, Parents have on several occasions made inquiries with the District regarding their current intention to use the compensatory education funds awarded by the Hearing Officer. In one example, in February 2022, Parents sought to obtain music therapy for AH while she is in the hospital, but their attempt to access the compensatory education funds for that purpose was rebuffed. They have also not been given any reasonable explanation for the District's failure to make compensatory education available. Parents were denied access as recently as March 2022.

## CAUSES OF ACTION

### Count I

### For Award of Attorneys' Fees, Expert Fees and Costs Under the IDEA and Section 504

43. Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

44. Pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B), the Court may award reasonable attorneys' fees as part of the costs to, among others, a "prevailing party" who is the parent of a child with a disability. Similarly, under Section 504, 29 U.S.C. § 794a(b), the Court may allow the prevailing party "a reasonable attorney's fee" as part of the costs.

45. The Hearing Officer concluded that the District had denied AH a FAPE under the IDEA. Under Third Circuit interpretation, the denial of FAPE

under the IDEA also constitutes a denial of FAPE for purposes of Section 504. See, e.g., A. B. v. Abington Sch. Dist., 440 F. Supp. 3d 428, 434 n.5 (E.D. Pa. 2020).

46. Based on the Decision, Plaintiffs prevailed on the principal claim made in Parents' due process complaint–that the District denied AH a FAPE. Plaintiffs were also awarded the principal remedies they sought in the case– i.e., compensatory education and a new IEP, one required by the Decision to incorporate amendments that would address AH's significant behavioral issues on a number of fronts.

47. "A party 'prevails' under the IDEA if she achieves relief and if 'there is a causal connection between the litigation and the relief from the defendant.'" J.O. ex el. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002); A.B. v. Pleasant Valley Sch. Dist., No. 3:17-CV-02311, 2 (M.D. Pa. Jun. 28, 2019).

48. "[T]he combination of administrative imprimatur, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a 'prevailing party' under Buckhannon's principles." A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 76 (2d Cir. 2005) (referring to Buckhannon Bd. Care Home v. West Va. D.H.H.R., 532 U.S. 598 (2001)).

49. The Decision, which is enforceable in state or federal court, see 20 U.S.C. §1415(i)(2), indisputably altered the legal relationship between the

parties. For example, before the Decision, the District had never before been <u>obligated</u> to Parents to hold an IEP meeting within a certain amount of time, or to create a new Positive Behavior Support Plan for AH, on the pain of a potential contempt citation.

50. Accordingly, Plaintiffs are "prevailing parties" within the meaning of IDEA, 20 U.S.C. §1415(i)(3)(B), and Section 504, 29 U.S.C. § 794a(b).

51. While a party is not entitled to the costs of experts under the IDEA, courts have held that a prevailing party may recover expert costs under Section 504. See <u>A.B.</u>, supra, at 18; <u>Elizabeth S. v. Sch. Dist. of Philadelphia</u>, Civ. No. 11-1570 (E.D. Pa. Jun. 28, 2012).

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

    i. Awarding Plaintiffs their attorneys' fees, expert fees and costs incurred during the state administrative proceeding and in this Court as permitted under 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b); and

    ii. Awarding Plaintiffs such other relief as the Court deems equitable and just.

### Count II

### Enforcement of the Hearing Officer's Decision

52. The District is obligated to comply with the terms of the Decision, which includes the award of compensatory education. The District did not appeal any aspect of the Hearing Officer's Decision through the end of the

appeal period, which was April 5, 2022. See 20 U.S.C. § 1415(i)(2)(B). Therefore, the Decision is final and unappealable.

53. The District has refused to make available to Parents the use of the compensatory education services ordered by the Hearing Officer, and has refused to indicate a date certain by which such use will be permitted. Instead, the District has deliberately ignored or rebuffed Parents' several pleas for access to the compensatory education pool.

54. The District has therefore violated the clear terms of the Decision.

55. Section 1415(i)(2)(A) of the IDEA provides that any party "aggrieved by the findings and decision" of a hearing officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States."

56. When a party to a terminated due process proceeding fails to comply with its obligations to the other party to such proceeding, as set forth in a final order of the hearing officer, the second party is generally deemed to be "aggrieved" by the first party's failure of compliance. The second party is therefore entitled to bring suit in state or federal court to enforce the terms of the decision of the hearing officer and remedy the breach. See § 1415(i)(2)(A); James v. School Dist. of Phila., 559 F. Supp. 2d 600, 615 (E.D. Pa. 2008).

57. Plaintiffs respectfully seek to enforce the terms of the Decision against the District and remedy the withholding of compensatory education

15

funds from Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

    i. Ordering Defendant to immediately make available to Parents a bona fide and effective procedure by which Parents may draw on the compensatory education services and education aids awarded to them in the Decision, without unnecessary formalities or impediments;

    ii. Awarding Plaintiffs their attorneys' fees, expert fees and costs incurred during this proceeding and in this Court as permitted under 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b); and

    iii. Awarding Plaintiffs such other relief as the Court deems equitable and just.

                                        Respectfully submitted,

                                        **MONTGOMERY LAW, LLC**
                                        1420 Locust Street, Suite 420
                                        Philadelphia, Pennsylvania 19102
                                        (215) 560-7563
                                        *Attorneys for Plaintiffs*

                                          By: _____
                                                Joseph W. Montgomery
                                                Pa. Bar ID No. 209527

**Filed: May 9, 2022**